*McGlathery & McClintock* for the appellant—*R. Noble* for the appellee.

---

SEYMOUR *et al.* v. HARRISON *et al.*

*Appeal from Jones District Court—Saturday, April* 14.

SUFFICIENCY OF EVIDENCE TO ESTABLISH NOTICE OF FRAUD, DISCUSSED.

SUIT in equity, to subject land in the hands of grantees to a trust existing in parol against it, in the hands of the grantor. Judgment for the plaintiffs, and defendants appeal.

*G. W. Field* and *F. E. Bissell* for the appellants.

*W. G. Hammond* for the appellees.

COLE, J.—Prior and up to 1837, Moses Seymour, A. Kramer, William Seymour, A. Harrison, and Jacob Swisher, were doing business together in Ohio, under the firm name of Seymour, Kramer & Co. At that time Kramer ran off from Ohio with money of the firm, and came to Iowa and invested it in lands. Soon afterwards, Harrison moved to Iowa, and, by agreement between the partners, commenced, took charge of, and prosecuted a suit, in equity, against Kramer, for a dissolution of the partnership, and for contribution by him to the several partners for money brought away by him, and other money expended in payment of the debts of the firm. In 1851 a decree was rendered, dissolving the partnership, and awarding several judgments against Kramer in favor of each partner for the amounts found due them respectively, and directing executions to issue on such several judgments.

Execution was accordingly issued upon the judgment in favor of A. Harrison, and, thereunder, the land in controversy was levied upon and sold to the plaintiff in the execution, A. Harrison, for the amount

of his judgment. The sheriff's deed was executed therefor in 1854. At the same time another execution was issued upon the judgment in favor of William Seymour, and other real estate was levied upon and sold to him, it being bid in for him by A. Harrison. Afterwards, William Seymour having died, by legal proceedings a decree was obtained directing the sheriff to convey the real estate to the heirs of William Seymour; and it was done accordingly.

The defendants, Moses Shoemaker and Daniel Shoemaker, when quite young boys, were bound to A. Harrison, in Ohio, some time prior to his removal to Iowa; and they came with him to Iowa and remained with him till long after they attained their majority. In 1844, Harrison, being indebted to Moses and Daniel Shoemaker in about the sum of fifteen hundred dollars, conveyed to them certain real estate in Jones county, Iowa, to secure the payment of the debt. In 1848 this debt was sued upon, and judgment rendered thereon against Harrison for the amount.

In January, 1856, the debt still remaining unpaid, Harrison sold and conveyed the real estate in controversy to Moses and Daniel Shoemaker, in full satisfaction of the amount due them; the consideration being stated at three thousand dollars.

In November, 1860, Moses Seymour, Jacob Swisher, and the executors of William Seymour's estate, brought suit against A. Harrison and the heirs-at-law of William Seymour, claiming that, by an agreement between the partners, who were the plaintiffs in the suit first named, Harrison was to act as their agent, and have executions issued, and bid in the land in the name of the several partners, in his discretion, but for the benefit of all, in proportion to their respective interests; and the plaintiffs alleged that Harrison had bid in the land now in controversy, in his own name, but really in trust for himself and his co-plaintiffs, and had sold the same for three thousand dollars, and asked for judgment against him for their *pro rata* shares of that amount.

After this last-named suit was brought, and in November, 1861, Moses and Daniel Shoemaker conveyed the lands originally conveyed to them as security for their debt, at the request of A. Harrison, to two of his sons.

In December, 1863, a decree was rendered in the case last named, establishing the trust in A. Harrison, as claimed in the petition. The defendants, Moses and Daniel Shoemaker, were thereafter made parties, and the cause was referred to a referee, to take proofs, and report whether the title was still in A. Harrison, or other parties charged with notice of the trust. The referee reported, in substance, that the title was in the defendants, Moses and Daniel Shoemaker, and that

they held the same charged with notice of the trust. The report of the referee was confirmed, and decree rendered accordingly, and the defendants, Moses and Daniel Shoemaker, appeal.

The entire evidence was read to us by counsel on the hearing, and we were favored with unusually elaborate, perspicuous and interesting arguments thereon, and each of the majority concurring in this opinion have been brought irresistibly to the conclusion that the evidence does not show that the Shoemakers had any notice of the trust or of such facts as would put them upon inquiry so as to charge them with constructive notice of it. The sole question in the case is one of fact, and it would serve no useful purpose for us to review at length the evidence and show the testimony and the reasons which impel us to the conclusion reached.

The Shoemakers are shown to be ignorant or unlearned men; they were called as witnesses by the plaintiffs, and examined at length. Their testimony bears unmistakable marks of truth, frankness and candor; and while it does show that they had full knowledge of the suit and litigation between the partners and Kramer, it wholly fails to show that they had any knowledge of the agreement by which Harrison was to bid in the property in his own name, but for the benefit of all the partners.

It will be remembered that the first litigation resulted in judgments in favor of the several individual members of the firm; and that the purchase by Harrison of the land in controversy was in his own name under an execution in his own favor; and that thereby upon the record Harrison's right to purchase for himself was clear and unmistakable. If there was any trust, it existed only by reason of a parol agreement between Harrison and his former partners, and there is not one word of direct evidence showing that the Shoemakers had any knowledge of that . parol agreement. Their knowledge of the litigation and its results, as shown to them by the record, negatives the idea of a trust, and the fact that another one of the partners had, upon execution issued in his behalf, at the same time also bid in another tract of land in his own name, and held the same in his own right as far as could be known from the records and proceedings, and such holding wholly unquestioned by the other partners would tend strongly to show that Harrison's right and title was clear in himself, and free from any trust whatever.

Before the Shoemakers were made parties their depositions were taken by the plaintiffs; and although their testimony is characterized by unusual frankness and candor, the plaintiffs' counsel studiously avoided asking them or either of them whether they had any knowledge or notice of the trust; although they were afterwards made

parties, the cause was tried upon proofs taken before they were thus made defendants, and hence no opportunity was afforded them of denying knowledge of such trust; and they might well rely upon the rule that no denial by proof was necessary, until a notice or knowledge by proof was shown.

Although they only paid as consideration a debt due them from Harrison, yet they surrendered security which they held for that debt. They purchased the land in 1856, and no proceedings are commenced against them or the land till 1864, and in the meantime they have surrendered the security which they held, and made valuable and permanent improvements upon the land. We have stated enough to show the general line of thought which leads us to our conclusion, and need, therefore, do no more than order that the judgment of the District Court as to said Shoemakers be

Reversed.

DILLON, J., *dissenting.*—An attentive examination of the testimony in the case has led me to a different conclusion from my brethren, and has impressed me with the correctness of the decree below. Looking not alone to what the Shoemakers *say*, but to their *acts* and the *circumstances*, I am of opinion that they had notice of the trust, or of such facts as should have put them upon an inquiry which would have led them to a knowledge of it. I am in favor of affirming the decree below; at least, to the extent of charging the land with the amount of the plaintiffs' debt.